The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good afternoon. We're happy to have you here. Sorry, we aren't going to be able to come down and shake hands at the end, but you know, you have our best wishes. We are happy to hear argument about first case number 20-1690, Warfield v. ICON. Mr. Edwards. Thank you, Judge Motz. May it please the Court. My name is Chris Edwards and I represent the appellant, Jim Warfield. The arbitration panel in this case did exactly what the parties asked it to when it rendered a judgment in favor of Mr. Warfield. ICON asked the arbitration panel to apply North Carolina's employment at will presumption, while Mr. Warfield asked the panel to apply a just cause standard found in a Seventh and Eighth Circuit case also applicable to the arbitration arena. With no North Carolina case directly on point, the arbitration panel permissibly concluded that Mr. Warfield had been wrongfully terminated. ICON asked the district court to vacate that award for manifest disregard of the law, and in so doing, asked the district court to treat the arbitration panel as a junior varsity trial court, to ignore its contractual promise to arbitrate and to instead disregard the promise of efficient dispute resolution. The district court erred when it vacated the district court's judgment for three reasons. First, there is no North Carolina case on point, and so ICON cannot show that precedent compels a contrary result. Second, though ICON now relies on this court's decision in Raymond James against Bishop, ICON failed to educate the panel on the meaning of that case that it advanced in the district court, and so the panel did not refuse to heed the law. Tell us a little bit more about your argument about Raymond James, because it seems to be the most telling case against you, and I've read your brief, but I wasn't quite sure what your argument is. Well, I think there are two arguments on the Raymond James case. There's one on the substance of that case, and then there's one on the procedure on the way ICON presented that case to the arbitration panel, and Judge Motz, I'm happy to address either one. Maybe in seriatim. In other words, okay, the substance of the case, and then whether they made the decision known, and I guess this is your claim, and the arbitration panel expressly rejected it. Yes, Judge Motz. So turning to that first question about Raymond James, I think that the case is distinguishable. This court in Jones against Dantzel says that the precedent has to compel a contrary conclusion. The Raymond James case does not do that. The court decided it. On the last page of the decision, the court lists two factors. That is voluntary, the at-will employment, and then Mr. Bishop's voluntary termination of his employment. He walked away from his job, and the court says, well, looking at those two factors, we decline to apply Adron and Lange on the circumstances of this case. I think it is debatable as to, you know, the court didn't decide which one of those was dispositive. The court did address them in tandem, and so I think that what is preventing the Raymond James case from controlling here is that tandem decision between at-will employment and then the voluntary separation. Here, there's no dispute. Mr. Warfield did not voluntarily separate from ICON. He was terminated. Well, was Raymond James a wrongful termination case? I don't think so. Your Honor, it wasn't a wrongful termination case. That's exactly right. As we've pointed out, Raymond James starts, there are kind of threads of wrongful termination, but this court's analysis of the arbitration decision says there's no basis for this other than breach of fiduciary duty. If you look at the history of that case, actually, the wrongful pass in a reply brief, and so the court addresses it, but it's not really something that the party's focused on until the very last minute, and it's something that the court addressed but didn't really need to because, again, the Raymond James case started out as a dispute about whether or not Raymond James had breached its fiduciary duties to its former employees by, quote-unquote, the unauthorized practice of law. Even if the court were to determine that Raymond James controlled or could arguably control, I don't think the court needs to go that far. If we look even as far back in this court's decision in Remy against Payne-Weber, the arbitrator only has to do what the party's asked it to do. We see that principle applied in other cases. In the 3S Delaware against Dataquitt case, the court discusses a statute of limitations defense that was not fully fleshed out. That was going to be my question. I think that's probably where you're getting ready to go, but I think your argument is that opposing counsel did not make the panel aware of the Raymond James case for the proposition they argue now. Is that right? That's right, Judge Thacker. The first time that ICON ever brought Raymond James to anyone's attention as dispositive, it was in the district court. We can look at the by dispositive, but I'm looking at JA150, which is their trial brief, I think the arbitration brief, and they address the general proposition that North Carolina law is an at-will state. They address your argument that these 8th and 7th Circuit cases might provide some other way of looking at it, and then they say that Raymond James shows that those cases don't apply here. They're not collective bargaining cases like those and that there's no express agreement. That seems pretty consistent with what is argued in page 79. I mean, again, I don't know what you have to do, but that seems to be a stretch to me that you're saying they didn't bring that to attention, where all these cases, maybe not quite as robustly, but are laid out there. I mean, what do they got to do? Well, Judge Quattlebaum, I agree. First off, I think you're right that page 79 and page 150 essentially contain the same proposition, and so I understand that proposition to be, well, the 4th Circuit said these cases were distinguishable, but there's no indication that the 4th Circuit had rejected them in that. Saying they're distinguishable is not saying that the 4th Circuit had said that the claim could not proceed. I draw your attention to page 149 of the appendix, and on that page, ICON discusses, that's again in its trial brief, the 6th Circuit decision in Crawford, and Crawford is based on the Michigan Court of Appeals case samples that we cited in our brief, and so the point they're making there is the 6th Circuit has affirmatively rejected this claim, and so from our perspective, it's not enough just to say, well, the 4th Circuit has said there might be some other considerations underlying the 7th and 8th Circuit decision, but there's no express statement. Yeah, I appreciate that. I mean, I don't need to go over and over it. It's just, I mean, you know, I mean, what Bishop or Raymond James, I think Judge Motsch makes a good point. The case began kind of as a breach of fiduciary duty, and then because of the problems with that, the plaintiffs, you know, tried to salvage it by arguing wrongful termination, and so our court addressed both the primary issue and said it was extra, it was beyond the powers, and then considered the other alternative arguments, if you will, whether they're Hail Mary or otherwise, and said those don't apply, and as I read it, they say they don't apply if there's a contract that says it's at will, and which, you know, was not the case in the 7th and 8th Circuits, but was the case there, and quite frankly, the contract as quoted in Raymond James isn't nearly as clear as the that this was not presented to the court, you know, and quite frankly, I have a little trouble with the issue that you seem to say there's not a case on point, and I'm just maybe, which would seem to preclude a novel theory forever being the subject of manifest disregard of the law, and it just, maybe that's right, but here we got a general proposition that you're at will, and you're advocating an exception, and I grant you North Carolina law has not raised that exception, but does that mean every exception that has not made its way to the appellate courts is, you know, can't be considered manifest disregard? I asked a lot. That's probably about five questions. That's a little unfair, but let me try to unpack that, Judge Plotelbaum, a little bit, and please let me know what I'm missing out on. I think we have to start with the court's case, Jones against Dantzel, and in that case, the court expressly said there has to be controlling precedent that compels the contrary conclusion, and so I think that in the absence of a North Carolina case compelling the contrary conclusion, that is a North Carolina case along the lines of Crawford or samples out of Michigan, I would agree that a novel theory can proceed in arbitration. Again, the point of arbitration is to allow the parties to effectively resolve their claims, and the court is not supposed to, even if the arbitrator's wrong about the way he interprets the law, the court's not supposed to second guess that determination, and so I think I am sympathetic to the idea that it's a novel interpretation of the law, but at the end of the day, the parties agreed to submit that to the arbitrator. I contrast that with a case, and I apologize for not knowing the name off the top of my head. I found it recently in my review, but Judge Thacker wrote a case in 2019 about a crop insurance arbitration, and so the contract in that case says you must consider the FDIC's position, and the arbitrator didn't. I think that type of disregard is manifest disregard of the law. The court in that case concluded that it was, but here it's just a difference of perspective. There is, as we point out in our briefs, there are exceptions to North Carolina's general employment at will doctrine, and so it was incumbent upon ICON in the arbitration proceeding to make the case that Bishop controlled, to make the case that there was a North Carolina case directly on point. And here the panel decision is so sparse that it is at least hard for me to say that they disregarded the law. Rule 12904, could either party have requested a written explanation of the decision so we would be better equipped at this point to determine whether the panel disregarded the law? Judge Thacker, I think either party could have requested an explanation. In the FINRA arbitration manual that's in the record, I think it's in the 20s or the 30s, there's an explanation that if both parties request it, the arbitrator gets an honorarium. If one party requests it, they don't. There's no evidence in the record that either party requested it. Right. I guess that's my point. Nobody requested it, so we don't really have... At least one could argue we would be second-guessing what the panel did at this point if we vacated the award, correct? I think that's right. I'd highlight to the panel that it was ICON's burden to show manifest disregard. And on this unreasoned opinion, which ICON never requested an explanation for, I think it's exceedingly difficult to show that there was manifest disregard in this sparse opinion. I think along the way, when we were discussing the Raymond James case, it was said that the cases that Ip discussed, Argonne and Myung, that neither of those cases involved a state in which state law was employment at will, but actually in Argonne, it did involve a state that had employment at will doctrine, didn't it? Judge Montz, just briefly, I see my time is about to expire. You can answer the question. You're right. Your reading of that is right. As ICON indicated before the panel, North Carolina is like 49 other states that's employment at will. But specifically, the court said it in Argonne, not a party. The court said it had an employment at will doctrine. That's correct. That was a decision notwithstanding state law employment at will doctrine. That's correct, Your Honor. Okay. Well, we'll hear from the other side and then maybe we'll come back and tell us what you think. Okay. Thank you. Thank you. Counsel? Yarbrough? Thank you, Judge. May it please the court. My name is Jonathan Yarbrough and I'm here on behalf of the appellees, ICON Advisors, Inc. and ICON Distributors, Inc. And of course, we are asking this court to affirm the award of the District Court in the Western District vacating the Warfield. I want to make a couple of points about the standard of review. It's not for a court, although the standard of review is narrow, it's not for the court to simply rubber stamp arbitrator decisions, nor is it for the arbitrators to make public policy, which is what we would argue they did in this case. As Judge Mullen explained in his decision vacating the award, there were several ways, several grounds to look at vacating awards. And those grounds included where an arbitrator exceeded the powers and basically dispensed some form of industrial justice or where the award doesn't draw its essence from contract interpretation. It's simply baseless or, again, manifest disregard. You only argued manifest disregard, right? Well, we argued and the judge found manifest disregard, but the judge brought up those arguments as well in his opinion. And frankly, any of the grounds would apply in this particular circumstance. But with respect to the manifest disregard, we would argue that the legal principle here was very clear and is not subject to... What is it? What is the binding precedent requiring a contrary result? Well, Your Honor, Judge Thacker, I would argue, frankly, that under these circumstances, the arbitrators didn't even have to go beyond the at-will employment doctrine here in North Carolina. The law is well settled. The law is well settled in North Carolina that... Involving arbitration? That's the point, isn't it? That's absolutely my point. No, it's their point. It's what distinguishes this. Well, my point is... According to them. And what I'm asking you is, is there a North Carolina law that meets that, that involves an employment case? Because they say there's not. And I thought you recognized there wasn't. And that's why we're talking about all these other cases. If I may, Your Honor, Judge Motz and Judge Thacker, if I may backtrack just a second to answer your question. When you look at the offer letter, the offer letter expressly stated that nothing in the letter is construed as a guarantee of employment and further stated that your employment with ICON Advisors, you are being Mr. Warfield, is at will and either party can terminate the relationship at any time without cause, with or without notice. That should have been a full stop right there. Okay, but I'm not asking you about the contract. I'm asking you about North Carolina law. You told me North Carolina law was clear that you couldn't have an employment at will contract in these circumstances. So, tell me what... And that's what I was looking for. Maybe, maybe... That's what I was looking for as well, a binding North Carolina case. Maybe I misspoke or was misheard, but my point was that North Carolina is clear that it is an at will state. There is no... And what is clear about that? So, show me the case. Well, we cited a variety of cases, Salter versus ENJ Healthcare. Right, and do any of them involve employment contracts? No, because absent... Well, they say that's the difference, you see. That's what I'm asking you to counter with a case, because I would be perfectly amenable to listening to that. That's what we need. Absent a contract of employment, which there wasn't one in this case, then employment is at will. And the arbitrator should have stopped at that point because it's clear at will employment is in play here. This is what the parties signed off on, on the offer letter that Mr. Warfield signed. Whether the panel interpreted this as a tort claim or a contract claim? Well, if you look at what the plaintiff or Mr. Warfield suggested throughout the arbitration, it was approached as wrongful discharge. In fact, if you go and look at their public policy in North Carolina, which is actually an exception to public policy, and there is some hint about Mr. Warfield having a disability, but that is then completely abandoned. And it's only later on, in fact, this briefing where they say, oh, well, we're not talking tort, we're talking contract. But there's no contract here. It frankly begs the question of what is the contract? Because the agreement that he signed expressly stated it was at will, it was terminable by either party at any time and was not a contract. And in fact, Mr. Warfield... Counsel, I want to make sure I understand you're saying, there is an offer letter that's signed. Are you saying that's not a contract? There's a... No, you're right, Your Honor. That's not a contract. It's an offer letter that expressly disclaims that. It says your employment with Icon Advisors is at will and either party can terminate the relationship at any time without cause, with or without notice. That's in the joint appendix at 2829 and also on page 78. And so that establishes the relationship between the parties as an at will employment relationship which either party can sever at any time. And in fact, Mr. Warfield in his submissions to the court makes reference to a proposed agreement where he was going to be promoted. And in fact, that proposed agreement is in the record, it's joint appendix 31 to 35. And if you look at that joint appendix, which has been submitted for your review, section 6.1 reemphasizes the outward nature... I'm sorry, I was asking about whether the arbitration panel, how do we know whether the arbitration panel interpreted this as a contract or a tort claim? I'm looking at JA59, the award, and I don't see the words contract or tort in there anywhere. JA59? Well, just, well, you point, maybe I'm looking at the wrong place. You just tell me how I know how the panel interpreted this so that I'm not second guessing what the panel did. I would argue, Your Honor, that the panel interpreted this as a tort claim, wrongful discharge. This was what was submitted to the court. In fact, the words breach of contract are nowhere to be found in any of the FINRA filings that are before this court, nor were they before the arbitrators. And if Mr. Warfield is arguing that there's a contract, it begs the question of, well, what were the terms of that particular contract? And frankly, under North Carolina law, if there is an employment agreement, then you don't have a wrongful discharge. I think Judge Qualamon has been trying to get a question in. Have I misinterpreted your body language? I'm sorry. Well, I have one, but that's okay. No, no, no. Thanks, Judge Quant. So here's kind of, I guess, the question I'm getting. I mean, as you know, the standard for us to review this is quite difficult. And, you know, if you look at the general requirements of disregarding the law, it seems to suggest the panel must have believed that this was an at-will relationship, that the Eighth and Seventh Circuit decisions didn't apply and decided anyway to rule in his favor, almost as if so, which is a standard, quite frankly, that I don't know how you could meet. But my question, we seem to also have a line of cases that fall either under manifest disregard or under the essence of the contract that, you know, quite frankly, don't really square with that general rule, but seem to say that if the contract is so clear or if the relationship is so clear, we don't give the panel a chance to, you know, say it's an interpretation. Basically, it could not be a fathomable, reasonable interpretation. And number one, is that essence of the agreement, is that something that you briefed to us? So, specifically, is that something that's before us on appeal? And second, how does that relate to what I call the, you know, the general way we review an award, which is you have to show that it's basically arbitrate or nullification. And, yeah. So, I hope that it makes sense. I believe it did, Your Honor. And I would argue, yes, we did brief that. And where would that be? I looked for that. Page six of our brief, and I apologize, I just have the brief in front of me, not the actual joint appendix section. No, no. I'm talking about you wanting us to vacate it, right? Yes, ma'am. Yes, ma'am. Okay. So, that's, you don't have to, you have to be, okay. And you say on page six, you make this argument. Because I thought your argument was what we had talked about earlier, which is this manifest disregard. Now, tell me, by all means, if I'm wrong. Well, what we did is we highlighted the two provisions. In fact, it's 10A4 that Judge Mullen, in part, talked about the arbitrators exceeding their powers, or then so imperfectly executed it that a mutual final indefinite award upon the subject matter submitted was not made, then we just. And then you have a following paragraph. You don't have to read to me your whole brief. What I want you to do is to talk to me about where in your brief you argue something other than manifest disregard. Because right after you quote this, you start talking about You're correct. We did go straight into manifest disregard from there. And regardless of whether the court looks at this from exceeding powers, or, you know, dispensing their own brand of judicial, excuse me, industrial justice, or manifest disregard, I believe that the award should still be vacated. Because Okay, I hear what you're saying. But if we go back to what Judge in front of us, he's recognized which we have, we aren't the decision makers here. We all we're doing is looking at the arbitration award, and seeing whether we must, whether we can disturb it. And what we've said many times, and most recently, in three s, which you didn't even cite, even though they cited it ad nauseum, appellant is required to show that arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it and propounding their decision. So where are we going to find evidence of that? Well, I would submit that the judge Mullen did, and we've we're reviewing the arbitrator's decision. That is absolutely correct. You're reviewing the to affirm Judge Mullins award. And when you look at the education piece, because we have a duty to educate the arbitrators, and then they of course, to be sure the arbitrator understands what the correct law is. That is that is correct. And when you go back and look at the record, Your Honor, when you look at the amendment, I'm done. Yes, ma'am. The answer to the amended statement of in the joint appendix. It was explained repeatedly that Mr. Warfield was an at will employee that only narrow exceptions applied. That he that the Argonne or Agron and that Liang decisions were not appropriate for these circumstances. Frankly, that the at will nature should have the inquiry to begin with. And that the plaintiff, Mr. Warfield cited no authority for his claim that Liang is somehow long established precedent. And it's certainly not precedent in North Carolina nor the Fourth Circuit. Yes, sir. But but counsel, I mean, that so I grant you North Carolina's at will. And I grant you this exceptions, not North Carolina. And I grant you the offer letter says it's at will. So I mean, I think that's all pretty fair and pretty clear. But he makes an argument in the arbitration proceeding that there's an exception to that or should be an exception to that. And he cites the Seventh and Eighth Circuit cases. And don't we have to vacate it? Do we have to determine that the arbitration panel heard that argument, felt like it was wrong and ruled with him anyway? I think if I understand your honor's question, you have to determine kind of a twofold step. One was North Carolina the at will just simply dispositive of this. And then two, does it fit into any of the exceptions that currently exist in North Carolina law? What the arbitrators did is they created out of thin air, as Icon said repeatedly during the arbitration hearing, they created out of thin air a new cause of action in North Carolina, wrongful termination without just cause. And in fact, I would argue that that was addressed quite squarely in the Judge Motz asked earlier about whether that was a wrongful discharge case. And if you look at the initial claims that were brought, the answer is yes, wrongful discharge. Ultimately, it's decided on the basis of this ethical ethical problem, right? Ultimately, it was decided on the basis of an ethical issue, which was outside the scope of their performance and right for outside the NSDA piece, which is right. There's her FINRA. But one has just regarded. But one interesting piece that I think is is applicable to this particular case is an exchange that took place with the court when it held a hearing on the motion to vacate. And during that particular hearing, and it's noted in the Raymond James decision at the hearing for the motion to vacate the council for the claimants was asked what the actionable conduct was, and their reply was wrongful termination. And then it begged the question from the court of, well, how can termination be wrongful under the terms of this agreement? It's an at will agreement. So you claim, do you not, that Raymond James is dispositive here? I would argue it is. Well, how could a Fourth Circuit law be, Fourth Circuit case be dispositive of North Carolina law? Well, I. That would be a new one on the people of North Carolina. I grant you that. But the argument that has been made here is twofold, that we didn't educate them on the law. We educated them on North Carolina law clearly, which is at will, at will, at will. No exceptions were brought here. This was not a breach of contract claim. There's no public policy at issue, despite it having been hinted at in the initial statement of claim. But you heard Judge Quattlebaum's question to you just a few minutes ago. We understand that you've made these general arguments and that you made the general argument that North Carolina law does not allow at will. But you don't have anything that counters, that tells us that the district, that the arbitrator looked at these cases and decided that they were wrong. Those are those two out of circuit cases and still went ahead. It's not a reasoned decision from the arbitrator. So there's nothing to look at beyond the pages that they did issue. Did you ask for a reasoned decision? Did you ask for make a motion? I think that my colleague asked your opponent about that and he said that nobody had asked for a fuller explanation. I was not counsel at the arbitration, Your Honor. It doesn't matter. I was years ago in front of Judge Winter and somebody said that, go get the counsel is what he said. Right. That's no excuse. I was going to finish by saying my understanding, though, is that for a reasoned decision, it has to be asked for jointly by the parties. That's my understanding of the federal rule. And I think you said that, but did you ask them if they would do that? I apologize to the court. I do not know the answer to that question. I've been through the transcript, but I don't see that either side asked for a reason here. So, counsel, in that situation, I mean, we have the award, you know, whatever it is. And how do we deal with that if our standard is we have to be able to conclude that the panel on fault, the Seventh and Eighth Circuit cases did not allow for this type of a claim, but allowed the claim to go forward anyway. And we have a decision that's not reasoned. What what do we do with that? I mean, let's assume they did decide that if it's not apparent from the panel, you know, are we supposed to infer it? I don't know how we would do that. Well, your honor, the position I would take is this, that the parties agreed that this was an at will employment situation. And there's agreement between the parties on the exceptions to at will employment under North Carolina law. And none of those exceptions apply. And so North Carolina had this exact situation where they have an employment agreement and said, there's no at will employment. That's your problem. You keep talking about North Carolina law. We don't have a North Carolina case. Your honor, with all due respect, I would suggest that if that claim was brought in state court, it would probably be met with a Rule 11 motion, because the FINRA piece is not something that these parties negotiated. It was imposed upon them. What the parties negotiated with respect to the employment was, here's your pay, and it's going to be at will employment. And Mr. Warfield signed off on that. This is, in effect, a glorified form selection clause that's been imposed by FINRA. See, your time has expired. I just want to be sure that you understand that this manifest disregard standard and our review of arbitration awards is more deferential than anything I've ever seen. I've had my law clerk go back and look at manifest disregard cases. And do you know how many published opinions there are in which we have found that there was manifest disregard? One. Do you know how many we found there was not manifest disregard? Many. And I understand. That's an incredible standard. And I think you keep trying to argue the merits to us as if we're some state court. I appreciate your position, Your Honor. I would suggest this. Not my position. Do you have contrary facts? I'm not trying to argue the facts, Your Honor. I'm taking the position that at will employment was agreed upon by the parties. FINRA arbitration was not something that the parties agreed on. And the doctrine of at will employment is applicable. The parties agree to that. There's no exception under North Carolina law. Therefore, the increase should have ended there. That's our position. And even if you look at the Raymond James Bishop case, it supports our position. And we would respectfully ask this court to affirm Judge Mullen's order vacating the arbitration agreement or vacating arbitration award rather. Thank you. Do you have further questions? No. Thank you very much. Thank you, Judge Motz. I'll address three points on rebuttal. The first point that I want to address is your concern in particular or the point you raised about the Bishop case. That case was um, maybe we're assuming too much. The case is a Fourth Circuit case, but it's a case about a contract that's interpreted under Florida law. That takes us back to this point that there is no case addressing North Carolina law on this point. If you look at the Sixth Circuit case in Crawford that Icon cited at page 149 of the appendix, that's addressing a Michigan case that squarely rejected Agron and Lang. But there is no comparable North Carolina case. Turning to your point, Judge Quattlebaum, about how do we know what should we know what the panel decided? Your Honor, this court has many cases that say that the burden is on the movement to demonstrate manifest disregard. And it's a heavy burden. Icon, I think, has conceded that there was no request for a reasoned decision. There is not a reasoned decision. There are only portions of the hearing transcript in the record. Based on the record that was before the district court, it was error to prove Icon's case for it by doing exactly what Icon is asking this court to do and revisit the merits of Mr. Warfield's claim. I understand. Could I stop you there? I think that's right. It is the party seeking to vacate the burden. The part of the law that seems to be a wrinkle for me is the U.S. Postal Service case. And to some extent, the Raymond James case, that talk about this notion that when a contract is involved that is crystal clear and not capable of an interpretation like the one you apparently advanced, that we view, maybe even without the evidence that you normally have, that the award just fails to reflect the essence of the agreement, just on the basis of the text of the contract. That's the way I read a sliver of cases from the Fourth Circuit. So I have a couple of questions on that. Number one, do you have a position over whether that issue has been presented to us by the parties? And number two, if it has or if we elect to consider it separately, what's your response to those cases? I'll address those in order. No, that position's not been presented by the parties. As my friend on the other side said, Judge Mullen listed the reasons for vacating an award in 10A4, but focused on manifest disregard. We briefed manifest disregard and ICON responded in kind. There's no alternative basis for affirmance in ICON's brief. So it is our position that ICON has waived that argument. Even if the court were to elect to forego that waiver, I think here it would be our position that the contract is ambiguous. And I want to help the court understand that a little bit, because I know that's not what the agreement that's at 22 and 23 of the appendix says. The agreement says one thing, but if we look at page 180 and 181 of the record, that's when Mr. Warfield signs this arbitration agreement. That's his form U4, which is consent to agreement to arbitrate. That's dated in May of 2017, prior to, which is after his April 2017 agreement. And so we've got a subsequent change where he gives up valuable rights, ICON gives up valuable rights, and they agree under the rules of FINRA to arbitrate all of the disputes that arise among them. Based on our reading of Agron and Lange, the Eighth and the Seventh Circuit case respectively, that act is an exception to the will. By agreeing to arbitrate at a later date, the parties have agreed that his termination must be for cause. And so I hope that answers your questions, Judge Quattlebaum. We think they've waived it, and we think that there is enough in the record, based on Agron and Lange, for that the arbitrator could have, I see my time's expired, may I briefly conclude? Yes. There's enough in the record. And so with that, we would ask that this court reverse the judgment of the district court and reinstate the arbitration award. Thank you. Do we have further questions? Anybody? Thank you very much.
judges: Diana Gribbon Motz, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.